■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KATHLEEN A. BERRY, Appellant. [652 NYS2d 785] —Carpinello, J. Appeal from a judgment of the County Court (Callanan, Sr., J.), rendered January 5, 1995 in Schuyler County, upon a verdict convicting defendant of the crime of murder in the second degree.

In April 1994, defendant shot her boyfriend Kevin Hull in the head at close range and then used a steak knife and meat cleaver to chop off his arms and legs so that she could dispose of the body in pieces. The crime took place in the Village of Montour Falls, Schuyler County. Defendant placed the body parts in separate plastic garbage bags. She disposed of the arms in a dumpster near her home, and put the legs and torso in the back of her pickup truck, later throwing them down an embankment in a rural area. A couple out for a stroll discovered the dismembered body and notified the police. The police came to interview defendant at Elmira Correctional Facility in Chemung County, her place of employment. After approximately two hours, defendant confessed to the crime. Following a jury trial, defendant was convicted of murder in the second degree and received a sentence of 25 years to life in prison. Defendant now appeals.

Defendant first argues that County Court should have granted her motion to preclude the prosecution's psychiatric witness from testifying at trial because of a delay in furnishing his report to the defense. CPL 250.10 (4) provides that, following a psychiatric examination, "the psychiatrist * * * must promptly prepare a written report of his [or her] findings and evaluation". The People's psychiatrist examined defendant in October 1994, shortly after the People received a copy of the report prepared by the defense psychiatrist. County Court ac-

commodated defense counsel by granting him an adjournment of the trial date in order to review the report once it was provided. While the determination of an appropriate sanction for failure to produce evidence is committed to the discretion of the trial court (*see, People v Martinez*, 71 NY2d 937, 940), the sanction of preclusion is warranted "only where undue prejudice will result from the failure to produce" (*People v Kehn*, 109 AD2d 912, 914; *see, People v King*, 221 AD2d 472, 472-473, *lv denied* 87 NY2d 975; *People v Nardo*, 153 AD2d 972, 973-974). Apart from the additional time that defendant would remain in jail awaiting trial, defense counsel was unable to articulate any other specific prejudice that she would suffer. Further, because defense counsel delayed for considerably more than 30 days before giving notice to the People that he would be presenting psychiatric evidence (*see,* CPL 250.10 [2]), any delay on the part of the People's expert in preparing his report is in part chargeable to defendant. Consequently, we find that County Court did not abuse its discretion in determining that no undue prejudice flowed from the People's conduct and in consequently denying defendant's motion to preclude.

Defendant argues that her initial interview with the police at Elmira Correctional Facility was a custodial interrogation, and that because of the officer's failure to administer *Miranda* warnings at the beginning of the interview, her confession should have been suppressed. In determining whether defendant was in custody prior to the reading of the *Miranda* warnings, "[t]he test is not what the defendant thought, but rather what a reasonable [person], innocent of any crime, would have thought had he [or she] been in the defendant's position" (*People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851; *see, People v Centano*, 76 NY2d 837, 838; *People v Smith*, 214 AD2d 845, 847, *lv denied* 86 NY2d 741; *People v Wright*, 188 AD2d 272, *lv denied* 81 NY2d 978). Defendant does not appear to have been a suspect at the time the interview commenced; rather, she was apparently approached because she was one of the last people known to have seen the victim alive. The interview did not occur in a police station, but at defendant's place of employment. The fact that defendant happens to have worked in a correctional facility is completely fortuitous and does not transform this interview into something sinister, as defendant implies. Based upon our own review of the record, we find that the interrogation at issue was investigatory, not custodial, and that the police were not required to administer *Miranda* warnings until after defendant confessed to the crime.

Defendant's argument that County Court erred in permit-

ting the People to cross-examine her about prior bad acts is similarly without merit. On cross-examination, the prosecutor was permitted to ask defendant about prior instances of violent conduct toward the victim. "Evidence of prior uncharged crimes may be received * * * if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule" (*People v Alvino*, 71 NY2d 233, 241). Following defendant's testimony on direct that she loved her boyfriend and that she had hoped that things could work out between them, she opened the door to the presentation of further evidence regarding the actual state of their relationship, since testimony regarding the parties' previous interactions was probative of defendant's intent (*see, People v Schwerbel*, 224 AD2d 830, 831).

County Court did not err in denying defendant's motion for a change of venue. Defendant claimed that substantial pretrial publicity compromised her ability to receive a fair trial, but set forth no facts in support of this claim. It is well established that there is no bright-line test mandating a change of venue where a certain number of potential jurors have expressed a preconceived opinion about a case (*see, People v Ryan*, 151 AD2d 528, 529; *People v McClary*, 150 AD2d 631, 632). Rather, a court must examine the totality of the circumstances in order to determine whether pretrial publicity "has so permeated the community as to render it impossible to obtain a fair and impartial trial" (*People v Ryan, supra*, at 529; *see, People v McClary, supra*, at 632). Here, although there was substantial newspaper coverage of the crime in this rural area, this was most likely due, in no small part, to the gruesome nature of the victim's death and dismemberment. The jurors in this case indicated their belief that they could set aside any preconceived notions and render a fair decision in this case. Consequently, we conclude that defendant fell well short of demonstrating "reasonable cause to believe that a fair and impartial trial cannot be had" (CPL 230.20 [2]) in Schuyler County.

Defendant's sentence was not harsh or excessive, especially in light of the heinous nature of defendant's crime and her apparent lack of remorse. The sentence imposed was within the statutory guidelines, and defendant has not demonstrated an abuse of the sentencing court's discretion which would warrant setting the sentence aside (*see, People v Kenny*, 175 AD2d 404, 407, *lv denied* 78 NY2d 1012; *People v Mackey*, 136 AD2d 780, 781, *lv denied* 71 NY2d 899).

Mikoll, J. P., Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed.